**Fill in this information to identify the case:**

Debtor Name  BARKER SLEEP MEDICINE PROFESSIONALS, PLLC

United States Bankruptcy Court for the:  EASTERN _____ District of TENNESSEE
(State)

Case number:  3:23-BK-32132-SHB

☑ Check if this is an amended filing

Official Form 425A

# Amended Plan of Reorganization for Small Business Under Chapter 11

**Barker Sleep Medicine Professionals, PLLC's Amended Plan of Reorganization, Dated 04/29/2024.**

### Background for Cases Filed Under Subchapter V

#### A. Description and History of the Debtor's Business

The Debtor is a professional limited liability company. Since 2005, the Debtor has been in the business of providing polysomnogram tests and treatment for sleep disorders. Debtor's business is healthcare related.

#### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A.

#### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as Exhibit B.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $297,860.00.

The final Plan payment is expected to be paid on 07/31/2027.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

*Barker Sleep Medicine Professionals, PLLC*                           *Case Number 3:23-bk-32132-SHB*

## Article 1:  Summary

This Amended Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Barker Sleep Medicine Professionals, PLLC (the *Debtor*) from cash flow from operations.

This Plan provides for:

|     |                                              |
|-----|----------------------------------------------|
|  0  | classes of priority claims;                  |
|  3  | classes of secured claims;                   |
|  1  | classes of non-priority unsecured claims; and|
|  1  | classes of equity security holders.          |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately _20.9_ cents on the dollar.  This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

## Article 2:  Classification of Claims and Interests

2.01    **Class 1**................... All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).  There are no claims in this Class.

2.02    **Class 2** ................. All claims filed and/or scheduled as secured.

         2.1.............. Claim No. 13 of LEAF Capital Funding LLC, to the extent allowed as a secured claim under § 506 of the Code.

         2.2.............. Claim No. 9 of Pinnacle Bank, to the extent allowed as a secured claim under § 506 of the Code.

         2.3.............. The undersecured claims of the following are in this Class:

                 Bankers Healthcare Group, LLC, Claim No. 1
                 Kapitus Servicing, Inc., Claim No. 3
                 Legend Funding
                 ODK Capital, LLC, Claim No. 11
                 ODK Capital, LLC, Claim No. 12
                 Pinnacle Bank, Claim No. 9
                 Rapid Finance Services
                 White Road Capital LLC d/b/a GFE, Claim No. 10

*Barker Sleep Medicine Professionals, PLLC*                    *Case Number 3:23-bk-32132-SHB*

2.03   **Class 3** ................   All non-priority unsecured claims allowed under § 502 of the Code.

2.04   **Class 4** ................   Equity interests of the Debtor.

**Article 3:  Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

3.01   **Unclassified claims**   Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02   **Administrative expense claims**   Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Below are the anticipated administrative expense claims and their treatment:

| Claim | Allowed Amount | Proposed Treatment of Allowed Claims |
|---|---|---|
| Subchapter V Trustee Fees | $ 10,000.00 (estimated) | Cash equal to the allowed amount of such claim on the Effective Date of the Plan |
| Gentry, Tipton & McLemore, P.C. Debtor's attorneys' fees and costs | $ 35,000.00 (estimated) | Cash equal to the allowed amount of such claim on the Effective Date of the Plan or as otherwise agreed |
| Elliott Advisory Group | $ 5,000.00 (estimated) | Cash equal to the allowed amount of such claim on the Effective Date of the Plan |

3.03   **Priority tax claims**   Each holder of a priority tax claim will be paid.  The Internal Revenue Service has filed Amended Proof of Claim No. 20 asserting a $694.38 priority claim (and a $497.18 general unsecured claim).  Debtor has or will object to Amended Claim No. 20, but, if allowed, the priority component of Claim will be paid within ninety (90) days from the Effective Date.

3.04   **Statutory fees**   All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.
**No statutory fees are owing.**

3.05   **Prospective quarterly fees**   All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.
**No quarterly fees will accrue in this case.**

*Barker Sleep Medicine Professionals, PLLC*        *Case Number 3:23-bk-32132-SHB*

## Article 4:  Treatment of Claims and Interests Under the Plan

4.01   **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|

Class 1 – **Priority claims**          ☐ Impaired
excluding those in Article 3    ☐ Unimpaired

Debtor does not believe there are any allowed priority claims.  [See Section 3.03.]

___

Class 2 – **Secured claims**

**Class 2.1**…………...    ☒ Impaired
                                     ☐ Unimpaired
LEAF Capital Funding, LLC ("LEAF") is the only member of this Class.
LEAF has filed the following claim, which is fully secured:

| Claim No. | Amount |
|---|---|
| 13 | $112,611.09 |

The LEAF claim will be paid in full.  The delinquent December 2023 $3,962.18 payment has been paid.  Crediting 4 post-petition $3,962.18 payments leaves a balance of $96,762.37, to which $15,000.00 is added for LEAF's pre-petition and post-petition attorney fees (which are capped at $15,000.00).  Debtor shall pay the $111,762.37 secured claim with a 5.95% rate of interest over a 3-year term.  A $3,800.00 monthly payment shall be made on the 25th day of each month.  There shall be a 30-day cure period if there is a default on the monthly secured claim payment.  LEAF shall retain the lien securing Claim No. 13 until the Claim is paid in full.

Nothing herein shall be deemed to release LEAF and Rosanne Barker's rights and remedies under a certain personal guaranty between LEAF and Rosanne Barker dated January 28, 2020 (the "LEAF Guaranty"). In conjunction therewith and for clarity, Rosanne Barker's obligations and liabilities under the LEAF Guaranty shall (i) remain in the full amount less any payments made to LEAF on its Allowed Class 2.1 Claim under this Plan and applicable agreements; and (ii) be paid upon the earlier of (a) any default with respect to LEAF under this Plan or the applicable LEAF agreements, or (b) the date of the final installment of LEAF's Class 2.1 Claim.

**Class 2.2**……………    ☒ Impaired
                                     ☐ Unimpaired
Pinnacle Bank ("Pinnacle") is the only member of this Class.  Pinnacle filed Claim No. 9 as a secured claim in the amount of $418,274.56.  Pinnacle's claim is not fully secured.  The secured claim in the amount of $115,000.00 has been reduced by $15,000.00 in adequate protection payments. The $100,000.00 balance, at 5.95% interest, will be paid through $3,039.93 monthly payments.  Pinnacle shall retain the lien securing Claim No. 9 to the extent

of the allowed amount of the secured claim until the secured claim is paid.  The allowed undersecured component of Pinnacle's claim will be paid the same percentage as Class 3 allowed unsecured claims.  Pinnacle Bank's claim will not be discharged because it is excepted from discharge pursuant to 11 U.S.C. § 523(a)(14).

There shall be a 30-day cure period if there is a default on the monthly secured claim payment.  The injunctive protection for Dr. Rosanne Barker shall terminate if the default is not timely cured.

**Class 2.3**............... ☒ Impaired
                   ☐ Unimpaired

The members of this Class are either scheduled as a secured creditor or have timely filed a Proof of Claim as a secured claim.  All of the claims in this Class are undersecured.

The claims in this Class are:

| Claimant/Claim No. | Claim Amount |
|---|---|
| Bankers Healthcare Group, LLC, Claim No. 1 | $206,966.35 |
| Kapitus Servicing, Inc., Claim No. 3 | 151,950.54 |
| Legend Funding | 58,000.00 |
| ODK Capital, LLC, Claim No. 11 | 27,836.97 |
| ODK Capital, LLC, Claim No. 12 | 25,361.15 |
| Pinnacle Bank | 333,274.56 |
| Rapid Finance Services | 63,790.00 |
| White Road Capital LLC d/b/a GFE, Claim No. 10 | 39,531.25 |
| | $906,710.82 |

The members of this Class will receive *pro rata* payments on their allowable claims in the same percentage as Class 3 allowed claims.

| Class 3 – **Non-priority unsecured creditors** | ☒ Impaired ☐ Unimpaired |
|---|---|

Debtor calculates the total for claims scheduled by Debtor as undisputed and claims filed as general unsecured is $280,770.20.  Debtor may object to some of the filed Proofs of Claim.

Allowed claims in Class 3 shall be paid a *pro rata* payment to the extent funds are available from disposable income.

| Class 4 – **Equity security holders of the Debtor** | ☐ Impaired ☒ Unimpaired |
|---|---|

Dr. Rosanne Barker shall retain her interest in the Debtor.

*Barker Sleep Medicine Professionals, PLLC*                          *Case Number 3:23-bk-32132-SHB*

## Article 5:  Allowance and Disallowance of Claims

| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: |
|---|---|---|

(i)   a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

| 5.02 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
|---|---|---|
| 5.03 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6:  Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | (a)  The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: |
|---|---|---|

| Executory Contract/Unexpired Lease | Other Party |
|---|---|
| Lease for 1388 Papermill Pointe Way, Knoxville | DFS Properties, LP |
| Lease for Kyocera copier | GreatAmerica Financial Services Corporation |
| Lease for tower server and related equipment | LEAF Capital Funding, LLC |
| Lease for postage meter machine | Pitney Bowes |

Motions to assume these four (4) unexpired Leases have been filed. Debtor will continue making post-petition payments required by each Lease.  The Debtor will cure any pre-petition default under each Lease as required by 11 U.S.C. § 365(b).

Debtor will also seek to assume an executory contract with RPM, a third-party billing service.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

The Debtor shall continue its healthcare business and make the Plan payments from disposable income.

## Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |

*Barker Sleep Medicine Professionals, PLLC*                              *Case Number 3:23-bk-32132-SHB*

| 8.07 | **Corporate governance** | Dr. Rosanne Barker is the only member of the Debtor. Dr. Barker will continue to manage the Debtor's business. |
|---|---|---|
| 8.08 | **Retention of Jurisdiction** | (**SEE ATTACHED "Retention of Jurisdiction"**) |

## Article 9:  Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of the debt to Pinnacle Bank or any debt:

  (i)  imposed by this Plan; or

  (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code.  The Debtor will not be discharged from the debt to Pinnacle Bank or any debt:

  (i)  on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

  (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal rules of Bankruptcy Procedure.

## Article 10:  Other Provisions

10.01 **Continued Reporting Requirements**. Pursuant to Fed. R. Bank. P. 2015, the Debtor is required to file monthly operating reports until Confirmation.  After Confirmation, the Debtor shall file quarterly reports until the case is closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court.

10.02 **Modification of the Plan**. The Debtor may propose amendments or modifications of this Plan at any time prior to Confirmation without leave of the Court.  After Confirmation, the Debtor, with approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan.  The foregoing provisions of this paragraph do not limit the ability the of Debtor to modify the Plan under § 1193 and applicable rules.

*Barker Sleep Medicine Professionals, PLLC*                    *Case Number 3:23-bk-32132-SHB*

10.03  **Notice.**  Unless otherwise directed by the Debtor in writing, notice shall be sufficient if delivered as follows:

| | |
|---|---|
| If to the Debtor or Reorganized Debtor: | Barker Sleep Medicine Professionals, PLLC<br>Dr. Rosanne Barker<br>1388 Papermill Pointe Way<br>Knoxville, TN  37919 |
| With copy to: | Maurice K. Guinn<br>Gentry, Tipton & McLemore, P.C.<br>900 S. Gay Street, Suite 2300<br>Knoxville, TN  37902 |
| If to the Trustee: | Brenda Brooks<br>Moore & Brooks<br>6223 Highland Place Way, Suite 102<br>Knoxville, TN  37919 |

10.04  **Vesting of Property.**  All property of the Debtor's estate shall vest in the Debtor upon completion of the Plan payments.

10.05  **Legal Binding Effect.**  The provisions of this Plan shall bind all claimants, whether or not they accept this Plan or whether or not their claim is impaired.

10.06  **Distributions to Claimants.**  All distributions under the Plan shall be made by the Debtor, whether the Plan is confirmed pursuant to Section 1191(a) or (b) of the Bankruptcy Code.  The Debtor shall file with the Court as a supplement to the Plan and provide notice to all creditors at or before confirmation, a list of all the creditors who will be receiving payments under the Plan and the total amount projected to be paid to each creditor under the Plan.  The initial payment to holders of allowed claims in Class 2.3 and Class 3 shall be made 90 days after the Effective Date and every 90 days thereafter for the term of the Plan.

The following provisions shall govern distributions under the Plan:

   a.  All payments under the Plan will be made by the Debtor to the holder of each allowed claim at the address of such holder as listed on the Schedules, or if different, the Proof of Claim, unless the Debtor has been notified in writing of a change of address.

   b.  Any payment required to be made under the Plan on a day other than a business day shall be made on the next succeeding business day.

   c.  *De minimis* Distributions less than five dollars ($5.00) shall not be made, and shall become unclaimed funds, which shall vest in the reorganized Debtor.

   d.  Holders of allowed claims shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the confirmation date without leave of the Bankruptcy Court.

*Barker Sleep Medicine Professionals, PLLC*                    *Case Number 3:23-bk-32132-SHB*

Any amendment to a claim filed after the confirmation date shall be deemed disallowed in full and expunged without any action by Debtor unless the claimholder has obtained Court authorization for the filing of such amendment.  The Debtor shall have no obligation to recognize any transfer of any claim after distributions have started.

e.  Unless expressly provided in the Plan, or confirmation order, post-petition interest and fees shall not accrue on or after the Petition Date on account of any claim.

f.  Unclaimed distributions shall be administered pursuant to section 347 of the Bankruptcy Code.  Should the holder of an allowed claim fail to negotiate a payment from the Debtor within 90 days of the date the check was issued, the Debtor shall provide the holder with written notice of the requirement that the holder of an allowed claim negotiate the payment within 180 days of the date the check was issued.  Should the holder thereafter fail to negotiate the payment within 180 days, then upon the expiration of 3 years, the Debtor may exercise its remedies under section 347(b) of the Bankruptcy Code.

---

**10.07  Co-Debtor Stay; Injunction**.  Dr. Rosanne Barker is a guarantor on several of the Debtor's debts.  Should any claimant seek to enforce or collect claims that are treated under this Plan, Dr. Barker would not have the ability to repay such debt and could be forced into a personal bankruptcy.  Any damage to Dr. Barker's credit could preclude or seriously impair the reorganized Debtor's ability to obtain post-petition financing in or outside of the Debtor's ordinary course of business because, in many cases, commercial financing involves an evaluation of the individual business owner's creditworthiness.  Dr. Barker's ability to obtain financing on behalf of the reorganized Debtor, and her participation in the reorganized Debtor is crucial to the success of this Plan, and to the ability of the reorganized Debtor to fulfill its obligations to the creditors and the estate.

Notwithstanding the absence of a statutory co-debtor stay in a case filed under chapter 11 of the Bankruptcy Code, **upon confirmation, this Plan shall operate as a stay applicable to, and/or an injunction against, all creditors identified in <u>EXHIBIT C</u>, from any act to collect all or any part of a debt of Debtor from Dr. Rosanne Barker as co-borrower, and/or personal guarantor of such debt until the case is dismissed, or converted to a case under chapter 7, or closed, whichever occurs earlier.**

The reorganized Debtor reserves the right to enforce this provision through injunctive and other relief and to seek actual damages including reasonable attorneys' fees incurred by the estate as a result of any violation of the injunction set forth herein.  The reorganized Debtor furthermore reserves the right to seek a stay of or an injunction against any collection and/or enforcement actions taken by any creditors against Dr. Rosanne Barker prior to the date of confirmation, where any such collection and/or enforcement actions present a risk to the estate, the confirmation of the Plan, and/or the reorganization of Debtor.

---

**10.08  Default Remedies**.  If the Debtor does not make the payments provided for under the Plan as and when due, the Debtor will be in default under the Plan ("Default").  After the occurrence of a Default, any creditor may send written notice to the Debtor, with a copy to Debtor's attorney and the Subchapter V Trustee, that the Debtor is in Default under the Plan ("Default Notice").  For payments to general unsecured creditors, the Debtor will be entitled to a 45-day grace period after the transmission of the Default Notice ("Grace Period") to cure the default.  If the Debtor has not cured the Default within the Grace Period, the creditor is entitled to pursue its rights in the Bankruptcy Court for the Eastern District of Tennessee or to commence a

*Barker Sleep Medicine Professionals, PLLC*                    *Case Number 3:23-bk-32132-SHB*

lawsuit to liquidate its claim in the Circuit Court or the Chancery Court of Knox County, Tennessee. For payments to secured creditors, secured creditors will be entitled to exercise any and all in rem rights against their collateral except that Debtor shall be entitled to a 30-day grace period after transmission of the Default Notice. This provision survives the confirmation of the Plan, and creditors are entitled to enforce this provision post-confirmation. The bankruptcy court with jurisdiction over this Plan retains jurisdiction to enforce this provision of the Plan.

---

### 10.09  Subchapter V Trustee.

1.  <u>Service of Trustee</u>. The service of the trustee appointed under Subchapter V of Chapter 11 (the "Subchapter V Trustee") shall terminate in accordance with section 1183(c) of Title 11. In a consensual case, such service shall terminate when the Plan has been substantially consummated. In a nonconsensual case, the Subchapter V Trustee shall continue to monitor the Debtor's compliance with the Plan. If the Debtor fails to timely make any plan payment to creditors, the Subchapter V Trustee may file and serve a notice of delinquency upon the Debtor and the Debtor's attorney. The Debtor shall have 45 days from the date of the notice of delinquency to make all payments due under the Plan, including any payments that become due within the 45-day period. If the Debtor is seeking to cure the delinquency in a modified plan, the Debtor must file a motion to modify the confirmed plan within 45 days of the notice of delinquency. If the Debtor is not current with Plan payments on the 45th day after the date of the notice of delinquency or has not filed a motion to modify within that time period, the Trustee may file and serve a report of non-compliance and may thereafter seek the dismissal or conversion of the case to Chapter 7.

2.  <u>Compensation</u>. Under section 330 of the Bankruptcy Code, the Subchapter V Trustee shall be compensated for services and reimbursed for expenses. However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the Plan is confirmed and the method of disbursement to creditors under the Plan:

a.  The Subchapter V Trustee's total compensation is estimated to be <u>$10,000.00</u> through confirmation. The Subchapter V Trustee will apply to the Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case.

b.  If the Plan is confirmed on a consensual basis under section 1191(a) of Title 11, the service of the Subchapter V Trustee terminates with substantial consummation of the Plan under section 1183(c)(1). The Subchapter V Trustee's allowed compensation, as with other administrative expenses, is payable on the Effective Date of the Plan, unless the Subchapter V Trustee agrees to different treatment.

c.  If the Plan is confirmed on a non-consensual basis under section 1191(b) of Title 11, then the Subchapter V Trustee will remain in place throughout the life of the Plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. The fee for the Subchapter V Trustee to monitor the plan payments made by Debtor shall be $500 on a semi-annual basis. As such, the Subchapter V Trustee may file additional or supplemental fee applications throughout the life of the Plan. Upon approval of the Subchapter V Trustee's fee applications in a non-consensual case, as long as all professional administrative claims are similarly treated in the Plan, the Debtor shall pay all fee amounts due to the Subchapter V Trustee on the Effective Date of the Plan, over the remaining life of the Plan, or forthwith.

*Barker Sleep Medicine Professionals, PLLC*         *Case Number 3:23-bk-32132-SHB*

---

    3. <u>United States Trustee</u>.  The United States Trustee is not bound by any of the provisions in Section 10.09 and may exercise all available remedies for non-compliance with the Bankruptcy Code without any cure or notice period.

---

10.10  **Request for "Cram Down" of Non-Accepting Classes**.  The Debtor requests that the Court confirm the Plan notwithstanding the failure of classes to vote to accept the Plan.  Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in a manner prescribed by section 1191 of the Code.  A Plan that binds non-accepting classes is commonly referred to as a "cram down" Plan.  The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the requirements of sections 1129(a)(8), 1129(a)(10), or 1129(a)(15) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan under the standard of section 1191(c) of the Code.  **Creditors and Equity Interest Holders concerned with how the cram down provisions will affect your claim or equity interest should seek independent counsel, as the variations on this general rule are numerous and complex.**  The Debtor is not required to file a motion or other pleading to seek and obtain cram down of a Plan.  As a result, the Debtor will seek the Court's confirmation of this Plan in accordance with the cram down provisions of the Bankruptcy Code by oral motion at the date and time of the confirmation hearing without further notice to creditors or other parties in interest.

Respectfully submitted,

Dr. Rosanne Barker

Maurice K. Guinn
(BPR No. 000366)
Gentry, Tipton & McLemore, P.C.
900 S. Gay Street, Suite 2300
Knoxville, Tennessee  37902
mkg@tennlaw.com
Attorneys for Barker Sleep Medicine
    Professionals, PLLC

**8.08 Retention of Jurisdiction**

Pursuant to §§105(a) and 1142 of the Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Code, (b) arising in or related to the Chapter 11 Case or the Plan or (c) that relates to the following:

(i)     To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article 6 hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)    To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtor, as applicable, after the Effective Date;

(iii)   To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any contested claim in whole or in part;

(iv)    To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by §1142 of the Code;

(v)     To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)    To hear and determine all fee applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Code;

(vii)   To hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Plan, or its interpretation, implementation, enforcement or consummation;

(viii)  To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(ix)    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any claim or cause of action by, on behalf of, or against the estate;

(x)     To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)     To hear and determine matters concerning state, local and federal taxes, fines, penalties or additions to taxes for which the Reorganized Debtor, the Debtor, or the Debtor in Possession, may be liable, directly or indirectly, in accordance with §§ 346, 505 and 1146 of the Code;

(xii)     To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtor or any person under the Plan;

(xiii)     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with causes of action of the Debtor (including Avoidance Actions) commenced by the Debtor or any third parties, as applicable, before or after the Effective Date;

(xiv)     To enter an order or final decree closing the Chapter 11 Case;

(xv)     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvi)     To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Code.

Barker Sleep Medicine Professionals, PLLC
Case No. 3:23-bk-32132-SHB

## LIQUIDATION ANALYSIS

On the December 11, 2023 Petition Date, the Debtor's assets, as reported on Schedule A/B were:

| ASSET | VALUE |
|---|---|
| Bank accounts | $4,015.63 |
| Accounts receivable | $643,288.00 (70% of AR amount will not be collected due to insurance contractual agreements) |
| Inventory/Supplies | $500.00 |
| Office equipment/furniture | $10,000.00 |
| Unexpired Lease for 1388 Papermill Pointe Way, Knoxville, TN | Unknown |
| Mailing lists and other compilations | Unknown |
| Deposits with MCA Debt Advisor | Unknown |

The accounts receivable, Debtor's only asset of significant value, are subject to security interests of several creditors.  LEAF Capital Funding, LLC has the first priority lien against the accounts receivable securing the following claim filed by LEAF:

| Claim No. | Amount |
|---|---|
| 13 | $112,611.09 |

**EXHIBIT A**

Pinnacle Bank, which filed Claim No. 9 for $418,274.56, has the second priority lien against the accounts receivable.  Because the value of the accounts receivable on the Petition Date was approximately $200,000.00, and there are other creditors with perfected security interests in the accounts receivable, a Chapter 7 Trustee would abandon the accounts receivable (there being no value in the accounts receivable to a Chapter 7 estate).

Claims filed as of April 24, 2024 total $1,220,970.05[1] with the breakdown in the following categories:

| Secured | Priority | General Unsecured |
|---|---|---|
| $929,333.79 | $694.38 | $292,133.44 |

Debtor does not believe there are avoidable transfers, if any, of value to the estate.

Any payment to holders of allowed unsecured claims in the Chapter 11 case will exceed what such creditors would receive in a Chapter 7 case.  There would be a *de minimis* or no payment to holders of allowed unsecured claims in a Chapter 7 case.

---

[1] The claims total is increased by claims scheduled by the Debtor, but not scheduled as contingent or disputed.

Barker Sleep Medicine Professionals, PLLC                    Case Number 3:23-bk-32132-SHB

## FINANCIAL INFORMATION

Debtor's current "Monthly Expenses" reflected in the Exhibit A attached to the Cash Collateral Order (Doc 104) are:

### MONTHLY EXPENSES

| | | |
|---|---:|---|
| RENT | $ 3,949.75 | |
| COPIER LEASE | 500.00 | (est.) |
| PAYROLL | 26,000.00 | (est.) |
| PAYROLL TAXES | 6,000.00 | (est.) |
| UTILITIES | 3,424.00 | (est.) |
| BCBS | 3,760.09 | |
| LEAF | 4,731.66 | |
| CLEANING | 2,350.00 | |
| CERNER | 1,297.00 | |
| TESTING SUPPLIES | 500.00 | |
| OFFICE SUPPLIES | 600.00 | |
| COMPUTER EXPENSE | 2,500.00 | |
| LEGAL/ACCOUNTANT | 3,000.00 | |
| RPM | 5,000.00 | |
| DR. BARKER | 30,000.00 | |
| PINNACLE BANK | 3,000.00 | |
| SUBCHAPTER V TRUSTEE (Escrow) | 1,000.00 | |
| **TOTAL** | **$ 97,612.50** | |

Differences in the monthly payments proposed in the Amended Plan are:

(1)   LEAF Funding              $ 4,158.50
(2)   Pinnacle Bank            $ 3,039.93
(3)   Subchapter V Trustee     No ongoing Escrow payment

**EXHIBIT B**

Considering these differences, the Debtor's total Monthly Expenses, not including payments proposed to holders of Class 2.3 and Class 3 claims, are $96,078.74. Dr. Rosanne Barker has foregone, and will continue to forego, receipt of the full amount of her budgeted draw if sufficient funds are not available to pay Monthly Expenses and make the Plan payments.

Debtor projects Plan payments will commence in July 2024. Accordingly, projected income for the remainder of 2024 is for July – December.

## FINANCIAL PROJECTIONS

| Period | Projected Income | Projected Expenses | Disposable Income |
|---|---|---|---|
| July-Dec 2024 | $ 626,352 | $ 585,671 | $ 40,681 |
| 2025 | $ 1,290,285 | $ 1,206,483 | $ 83,802 |
| 2026 | $ 1,354,799 | $ 1,230,613 | $ 124,186 |
| Jan-June 2027 | $ 664,497 | $ 615,306 | $ 49,191 |

The projected "Disposable Income" for the term of the Plan to pay administrative claims and Class 2.3 and Class 3 claims is $297,860.00. Estimating administrative claims at $50,000.00 leaves projected Disposable Income of $247,860.00 to pay Class 2.3 and Class 3 Claims.

Debtor projects a 3% increase in revenue and a 3% increase in expenses for 2025. Debtor projects a 5% increase in revenue and a 2% increase in expenses for 2026.

Debtor's gross income for 2021 was $2,009,481.00. Debtor's gross income for 2022 was $1,917,286.00. Debtor's gross income for 2023 was $953,774.60.

Barker Sleep Medicine Professionals, PLLC                    Case Number 3:23-bk-32132-SHB

## CREDITORS HOLDING DR. BARKER'S PERSONAL GUARANTY

Banker's Healthcare Group, LLC

Kapitus Servicing, Inc.

LEAF Capital Funding, LLC

Legend Funding

ODK Capital, LLC a/k/a OnDeck Capital, LLC

Pinnacle Bank

Rapid Finance Services

White Road Capital LLC d/b/a GFE

## EXHIBIT  C

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 29, 2024, the foregoing "**Barker Sleep Medicine Professionals, PLLC's Amended Plan of Reorganization, Dated 04/29/2024**" was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to Brenda G. Brooks, DFS Properties, LP, Tiffany A. DiIorio, Aaron L. Hammer, Erno D. Lindner, Gregory L. Logue, Erin Angeline Malone-Smolla, William F. McCormick, Robin M. McNabb, Aaron J. Nash, John P. Newton, Jr., Justin M. Sveadas, Dante Wen, and the United States Trustee.

Additionally, copies of "**Barker Sleep Medicine Professionals, PLLC's Amended Plan of Reorganization, Dated 04/29/2024**" were served on April 29, 2024, by first class mail with sufficient postage prepaid and addressed as follows:

| Internal Revenue Service<br>Centralized Insolvency Operations<br>P.O. Box 7346<br>Philadelphia, PA  19101-7346 | United States Attorney's Office<br>Howard H. Baker, Jr. U.S. Courthouse<br>800 Market Street, Suite 211<br>Knoxville, TN  37902-2342 |
| --- | --- |

*/s/ Maurice K. Guinn*
Maurice K. Guinn

*MKG/bd:Pleadings – 10107 Certificate of Service for Amended Plan of Reorganization (04-29-2024)*